IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02112-RM-KLM

ANDREW L. JOHNSON,

    Plaintiff,

v.

TIMOTHY J. KELLISON,
CHRISTOPHER REISS, and
EUGENE MARTINEZ,

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **[Motion for] Appointment of Expert Witness** [#62][1] (the "Motion"). Defendants filed a Response [#68] in opposition to the Motion. Plaintiff, who proceeds as a pro se litigant,[2] did not file a Reply.

In short, the incident underlying Plaintiff's claims occurred on October 20, 2017, while Plaintiff was a pretrial detainee at the Boulder County Jail. Plaintiff had been arrested the day before and while attempting to call his attorney on October 20, he asserts that

---

[1] "[#62]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

Defendant Timothy Kellison used excessive force against him, ultimately placing him in a restraint chair for an extended period of time. Based on this incident, Plaintiff brings claims for violations of his First Amendment right to access the courts and Fourteenth Amendment rights to due process and to be free from excessive force.

Here, Plaintiff requests the Court to appoint and pay for an expert in deep vein thrombosis as an expert witness in this matter. *Motion* [#62] at 1. Plaintiff states:

> In this case Mr. Johnson feels very strongly that an expert in deep vein thrombosis will help the trier of fact with scientific issues related to the risk/causes of developing deep vein thrombosis in healthy individuals from prolonged sitting in excess of two hours, without stretching and by having the circulation slowed through the use of restraints & not releasing them to allow movement & stretch to encourage blood flow to the limbs & explain the pain this causes, explain the signs & symptoms of the development of deep vein thrombosis & how or why this is a life threatening illness & how it can cause a pulmonari embuli [sic], & whether Mr. Johnson was or wasn't placed at risk of developing deep vein thrombosis from defendants' actions. The risk of developing blood clots or deep vein thrombosis is part of Mr. Johnson's claim.

*Id.* at 1-2. Defendants respond:

> While Plaintiff states that the risk of developing blood clots or deep vein thrombosis is part of his claim, the Complaint alleges only that he was put "at risk for blood clots." The Complaint does not contain allegations that Plaintiff developed deep vein thrombosis or blood clots or suffered any complications of this type whatsoever because of [Defendants'] conduct. [Defendants] object to the appointment of an expert to testify regarding a medical condition that Plaintiff did not have. Moreover, [Defendants] will be filing for summary judgment. At the very least, it is premature to appoint a medical expert in this matter, and even if Plaintiff's claims survive summary judgment, the allegations are not so complex so as to require the appointment of a medical expert.

*Response* [#68] at 1-2 (internal citation omitted).

Pursuant to Fed. R. Evid. 706(a):

> On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may request the

parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

Although Fed. R. Evid. 706(a) "permits the district court to appoint a medical expert, courts rarely exercise this power." *Rachel v. Troutt*, 820 F.3d 390, 397 (10th Cir. 2016). "Some courts treat this power as 'the exception and not the rule,' limiting appointment of experts to the 'truly extraordinary cases where the introduction of outside skills and expertise, not possessed by the judge, will hasten the just adjudication of a dispute without dislodging the delicate balance of the juristic role.'" *Id.* at 397-398.

"While Rule 706 provides no standard for determining when to appoint an expert, the policy [of promoting accurate factfinding] underlying the provision supplies some guidance." 29 Federal Practice and Procedure, Wright & Gold, § 6304, at 465 (1997). Courts have hesitated to find any affirmative obligation to exercise their Rule 706 power. *See, e.g., Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996); *Okla. Natural Gas Co. v. Mahan & Rowsey, Inc.*, 786 F.2d 1004, 1007 (10th Cir. 1986). In the absence of "complex scientific evidence or complex issues," the circuit courts have held that a district court does not abuse its discretion in declining to appoint an expert pursuant to Rule 706. *McKinney v. Anderson*, 924 F.2d 1500, 1511 (9th Cir. 1991); *see also Cestnik v. Fed. Bureau of Prisons*, 84 F. App'x 51, 53 (10th Cir. Dec.18, 2003) ("Given the relative lack of complexity of [the] case and [Plaintiff's] failure to submit any evidence that he was financially unable to retain his own physician, we cannot say that the refusal to appoint an expert constituted abuse of discretion.").

Further, as relevant here, "[w]hen appointing medical experts, the court is to allocate payment between the parties." *Rachel*, 820 F.3d at 398 (citing Fed. R. Evid. 706(c)(2)).

Reasonable compensation for an appointed expert is payable "by the parties in the proportion and at the time the court directs—and the compensation is then charged like other costs." Fed. R. Evid. 706(c). Courts have held that, under Rule 706(c), a District Court can apportion costs of an expert witness, and that this authority extends to excusing indigent parties from paying their share of the costs. *See, e.g., Ledford v. Sullivan*, 105 F.3d 354, 360-61 (7th Cir. 1997).

Here, Plaintiff "did not identify an independent expert and was unable to pay the district court's filing fee." *Rachel*, 820 F.3d at 398; *Motion* [#62]; *Order Granting Leave to Proceed Pursuant to 28 U.S.C. § 1915* [#4]. Thus, Plaintiff proceeds in forma pauperis in this matter. Importantly, the Court has no existing funds to pay for the appointment of an expert witness in a civil case. *See Patel v. United States*, 399 F. App'x 355, 359 (10th Cir. 2010) (citing 28 U.S.C. § 1915(c) for the proposition that "the in forma pauperis statute makes no provision for litigation expenses other than the reproduction of the record and transcripts"). As the Tenth Circuit Court of Appeals has stated in another lawsuit initiated by a pro se prisoner claiming, in part, medical negligence:

> The plaintiffs' dilemma in being unable to proceed in this damage suit because of the inability to pay for expert witnesses does not differ from that of nonprisoner claimants who face similar problems. Nonprisoners often resolve that difficulty through contingent fee retainers with provisions for arranging expert testimony. By seeking government funding in this case, plaintiffs are in effect asking for better treatment than their fellow-citizens who have not been incarcerated but who have at least equal claims for damages.

*Id.* (quoting *Boring v. Kozakiewicz*, 833 F.2d 468, 474 (3d Cir. 1987)). Thus, neither Plaintiff nor the Court has the ability to pay for an expert witness.

As a result, the Court "could appoint an expert only by identifying one on its own and directing the defendants to bear all of the costs." *Rachel*, 820 F.3d at 398. However, the

Court has the discretion to order one party to pay for expert testimony requested by the opposing party *only if that expert's testimony would substantially aid the Court*. See *Ledford*, 105 F.3d at 361. Here, though, the Court finds that the issues in this case are not overly complex or scientific. *See generally Am. Compl.* [#6]. It appears that both the Court and a jury would be able to understand the issues presented by Plaintiff's case without the assistance of a court-appointed expert. *See, e.g., Rachel*, 820 F.3d at 398 (holding that the district court did not abuse its discretion by refusing to appoint a medical expert to rebut the defendants' arguments as to the alleged adequacy of the plaintiff's medical treatment in a deliberate indifference claim). Finally, the Court notes that there appear to be no direct allegations or any evidence presented that Plaintiff actually endured deep vein thrombosis or blood clots as a result of his treatment, rather than merely enduring the "risk" of such medical issues.

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#62] is **DENIED without prejudice**. Plaintiff may renew his motion if he is able to provide evidence (for example, medical records) demonstrating that deep vein thrombosis is a result or a risk to him of the incident which forms the basis of his lawsuit. Any such motion shall be filed **on or before November 29, 2019**.

Dated: November 8, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge